FILED
United States Court of Appeals
Tenth Circuit

January 7, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CARL E. SHIVEL,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 07-5093
(D.C. No. 06-CV-82-FHM)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before **KELLY**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

Carl Shivel appeals from an order of the district court affirming the

Commissioner's decision to grant disability insurance benefits as of August 1,

2001, rather than his originally alleged onset date of December 1, 1999.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse the district court's judgment and remand for further proceedings.

## I.

Mr. Shivel filed his application for benefits in November of 2001. He claimed disability since December 1, 1999, from degenerative disc disease of the lumbar and cervical spine, paranoid schizophrenia, depression, anxiety, and a personality disorder. After two hearings before an Administrative Law Judge (ALJ), Mr. Shivel apparently was told by the ALJ that his application would be granted if he amended his alleged onset date to March 13, 2002. Mr. Shivel acceded, and on August 21, 2004, his application was approved using the amended onset date.

Mr. Shivel subsequently sought review by the Appeals Council, alleging that the ALJ had been biased and coerced him into amending his onset date by purposefully prolonging the evaluation process. The Appeals Council agreed to review Mr. Shivel's application, rejected the ALJ's pertinent findings, and concluded at step five of the five-step sequential evaluation process, *see* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining the five-step process), that Mr. Shivel was entitled to benefits as of August 1, 2001. The Appeals Council also found no specific evidence of bias. Mr. Shivel appealed to the district court, but a magistrate judge acting with the consent of the parties affirmed the Appeals Council's decision.

Mr. Shivel then brought his appeal here, maintaining that benefits should have been granted from his originally alleged onset date, December 1, 1999, rather than August 1, 2001. In taking this position, Mr. Shivel argues that the Appeals Council (1) failed to accurately assess his residual functional capacity (RFC); (2) improperly relied upon the medical-vocational guidelines (grids) to find him non-disabled; (3) wrongfully discounted his credibility; and (4) ignored evidence indicating that the ALJ was biased.

## II.

We review the Commissioner's decision to determine whether it is supported by substantial evidence in the record and to evaluate whether he applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The Appeals Council's decision is the final agency decision for purposes of our review. *See Fierro v. Bowen*, 798 F.2d 1351, 1353-54 (10th Cir. 1986). In conducting our review, we neither reweigh the evidence nor retry the case, but "examine the record as a whole, including anything that may undercut or detract from the [Appeals Council's] findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262.

### A. RFC Assessment

We first consider whether the Appeals Council properly assessed Mr. Shivel's RFC. The Appeals Council concluded that Mr. Shivel retained the ability to perform light, unskilled work before August 1, 2001, but not after.

With regard to his physical impairments, the Appeals Council noted the findings of Dr. Subrahim Krishnamurthi, who indicated that in February of 2002, Mr. Shivel suffered from mild arthalgia of the back and right shoulder, hypertension, and a history of depression, but nevertheless could perform light to medium work. The Appeals Council recognized that this latter finding was consistent with assessments done by agency physicians who reported that Mr. Shivel retained the capacity for nearly the full range of medium work. The Appeals Council also examined the opinion of Dr. William Stolzer, who believed that Mr. Shivel could return to light work in February of 2001, as well as that of Dr. Moses Owoso, who at the same time found that Mr. Shivel was alert and oriented, his dexterity for gross and fine manipulations were normal (as were his strength, reflexes, and grip), and that he had no sensory deficits. After reviewing this evidence, the Appeals Council concluded that Mr. Shivel's physical limitations did not preclude him from light work before August 1, 2001. This finding is supported by substantial evidence. To the extent the Appeals Council did not discuss a diagnostic showing disc degeneration or reports from Dr. Stolzer and Dr. Owoso indicating his slow gait and limited cervical and lumbar range of motion, it is clear from the decision that this evidence was considered, even if not discussed. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

We pause, however, at the Appeals Council's treatment of Mr. Shivel's mental limitations, particularly its failure to properly account for limitations

-4-

recorded on a psychiatric review technique (PRT) form. The regulations require the agency to evaluate a claimant's mental impairments that allegedly prevent him from working and document its findings on a PRT form. 20 C.F.R. § 404.1520a; *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996). To this end, agency physician Sally Varghess completed a PRT form, noting that Mr. Shivel experienced moderate restrictions in his activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, and pace. The Appeals Council was then required to discuss these findings and explain why the impairments failed to satisfy the criteria of a listed impairment. *See* 20 C.F.R. § 404.1520a(d)(2).

But the Appeals Council never discussed the PRT form or the limitations recorded on it. Instead, the Appeals Council acknowledged that Mr. Shivel may have had a mental impairment before August 2001, but concluded – without explanation – that this impairment had no more than a minimal impact on his ability to function. Although the Appeals Council noted Dr. Dennis Rawlings' testimony that Mr. Shivel's mental impairments did not satisfy a listed impairment, it failed to mention that this statement contradicted his own earlier testimony that Mr. Shivel did, in fact, meet a listing. The Appeals Council also failed to mention that Dr. Rawlings' testimony had been expressly stricken by the ALJ. Thus, the Appeals Council's decision lacks any explanation of how it

determined the impact Mr. Shivel's mental impairments had on his functionality either before or after August 1, 2001. *See id.* § 404.1520a(e)(2).

The Commissioner insists there was no need to discuss the PRT findings because there was no evidence of mental impairment prior to August 1, 2001. This is a post-hoc attempt to justify the agency's deficient analysis. "[W]hile [the Commissioner] is not required to discuss every piece of evidence in the record, he must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects." *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (quotation omitted).

Here, the Appeals Council not only failed to discuss the PRT form, but it completely omitted from its decision any discussion of Dr. John Hickman's July 16, 2003 exam. During this exam, Mr. Shivel revealed that he had been diagnosed with bipolar disorder in 1997, previously experienced suicidal thoughts and hallucinations, and presently suffered manic episodes, delusional thoughts, and "obsessive ideation about the death of his father and the burn injury to his daughter." Aplt. App., Vol. III at 376. Dr. Hickman's report indicated that Mr. Shivel was in an "extreme degree of psychological turmoil," and suffered "[d]ifficulties in concentration and attention, memory deficits, and poor judgment." *Id.* It also suggested that Mr. Shivel was "severely and chronically maladjusted if not actually psychotic." *Id.* Dr. Hickman's diagnoses included

bipolar disorder, paranoid type delusional disorder, pain disorder, borderline personality disorder, and severe difficulties with mood control.

Additionally, other evidence directly relates to the relevant period before August 1, 2001. *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (explaining that medical records that post-date the relevant time frame may be considered if they relate back to the relevant time frame). Indeed, a progress note from the Veteran's Administration dated October 4, 2001, indicates that Mr. Shivel had been experiencing "progressive paranoia, irritability, difficulty concentrating, insomnia, [and] auditory and visual hallucinations" since as early as February of 2001. Aplt. App., Vol. II at 235. And an agency interviewer observed in November of 2000 that Mr. Shivel had difficulty concentrating and answering questions as evidenced by his "problems remembering information about his physicians" and "confus[ion] on exact dates." *Id.* at 132. Yet there is no indication that the Appeals Council considered any of this evidence.

"When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the [Commissioner] is required to follow the procedure for evaluating the potential mental impairment." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993) (quotation omitted). Clearly, here, there was evidence of mental impairment. Therefore, it was incumbent upon the Appeals Council to document the evidence and discuss

how it impacted Mr. Shivel's functionality. Because this was not done, the case must be remanded to the Commissioner for further consideration. On remand, the Commissioner shall discuss both the evidence relied on and rejected to determine Mr. Shivel's mental RFC, as well as the weight given to any source opinion and the reasons for the weight assigned, *see* 20 C.F.R. § 404.1527(d).

## B. Grids

We next consider whether the Appeals Council correctly applied the grids, *see* 20 C.F.R. § 404, subpt. P, App. 2, to find Mr. Shivel non-disabled prior to August 1, 2001. "[T]he grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his ability to perform the full range of work in a particular RFC category on a sustained basis." *Williams*, 844 F.2d at 752 (quotation omitted). The grids may be applied, however, if a claimant's nonexertional limitations do not further limit his ability to perform work at the applicable exertional level. *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). Here, if a proper evaluation of Mr. Shivel's mental impairments reveals nonexertional limitations that impacted his functionality during the relevant time period, the grids may not be applied conclusively.

## C. Credibility

Mr. Shivel next contends the Appeals Council improperly discredited the testimony of he and his wife. "Credibility determinations are peculiarly the province of the finder of fact, and we well not upset such determinations when

supported by substantial evidence. Nevertheless, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quotations and alteration omitted).

In evaluating Mr. Shivel's credibility, the Appeals Council examined his wife's testimony, but did not refute or otherwise discredit it. The Appeals Council also noted that in February 2000, Mr. Shivel reported to Dr. Stolzer that he had "done well," had "not sought any medical attention," and had "seen [a] chiropractor who did adjustments." Aplt. App., Vol. II at 199. The Appeals Council referenced Dr. Stolzer's opinion that Mr. Shivel was capable of returning to work in February of 2001 and Dr. Owoso's medical findings. It then summarized "[t]he rather benign physical findings before March 12, 2002, [Mr. Shivel's] mostly conservative treatment, the opinions of various doctors who ha[d] treated and examined him, the opinions of his [wife], and his daily activities," and concluded that this evidence did not support his allegations of disabling impairment on December 1, 1999. *Id.* at 13. Given this discussion of the evidence and our standard of review, we conclude that the Appeals Council adequately linked its credibility findings to substantial evidence in the record.

### D. Bias

We lastly consider Mr. Shivel's contention that the ALJ was biased against him. The Appeals Council found no specific evidence of bias and neither do we.

The record shows that Mr. Shivel received a full and fair opportunity to develop the record and present evidence. *See Puckett v. Chater*, 100 F.3d 730, 734 (10th Cir. 1996). Although the Appeals Council acknowledged that the ALJ failed to adequately justify his exclusion of Dr. Rawlings' testimony, this isolated evidentiary ruling, while troubling, is not substantial evidence of bias. Mr. Shivel's contention that the ALJ purposefully prolonged the administrative process so as to coerce him into amending his onset date is mere speculation. And we find no record support for Mr. Shivel's assertion that the ALJ exhibited a pattern of bias against claimants with histories of substance abuse. Accordingly, we must reject his allegations of bias and deny his request to direct the Commissioner to assign his case to a different ALJ on remand.

**III.**

The judgment of the district court is REVERSED. The case is REMANDED to the district court with directions that it be remanded to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge