14-2506-cv
*Michaels v. Colvin*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of August, two thousand fifteen.

PRESENT: AMALYA L. KEARSE,
        ROSEMARY S. POOLER,
        CHRISTOPHER F. DRONEY,
                *Circuit Judges.*

-------------------------------------------------------------------
DAVID M. MICHAELS,

            *Plaintiff-Appellant,*

            v.                      No. 14-2506-cv

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

            *Defendant-Appellee.*
-------------------------------------------------------------------

FOR APPELLANT:            CHRISTOPHER JAMES BOWES, Shoreham, NY.

FOR APPELLEE:             MÓNICA P. FOLCH, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED** to the district court for further proceedings consistent with this order.

Plaintiff-Appellant David M. Michaels appeals from the district court's May 20, 2014 judgment denying his motion for judgment on the pleadings, granting the Commissioner's cross-motion for judgment on the pleadings, and affirming the Commissioner's denial of disability insurance benefits under the Social Security Act.[1] Michaels suffered a head injury on December 8, 2003, and was diagnosed soon after with a vestibular disorder, which causes him to experience episodes of dizziness. According to Michaels, these episodes are often triggered by extended computer use. The Administrative Law Judge ("ALJ") reviewing Michaels's application for benefits concluded, as set forth at Step Four of the Social Security Administration's sequential disability analysis, that Michaels was capable of performing his past relevant work on or before the date last insured, December 31, 2007.[2] We assume the parties' familiarity with the underlying facts, to which we refer only as necessary to explain our decision.

## I.    Michaels's Ability to Perform Past Relevant Work

The vocational expert who testified at Michaels's hearing—Darren Flomberg—stated that Michaels's past positions as a business analyst, project manager, director of research, and development manager each required "heavy computer use," which Mr. Flomberg defined as at least three to five hours of computer use in an eight-hour workday. The ALJ rejected Michaels's claim that his vestibular symptoms prevented him from performing such work, stating that January 2009 "was the *first time* that [Michaels] mentioned that use of a computer can trigger [his] symptoms" and that "[t]he treating record does not confirm [Michaels's] report *prior to calendar year 2008* relating to 'computer-use problems.'" Social Security Administration Administrative Record ("R.") 23 n.3, 24 n.4. As the Commissioner concedes on appeal, however, "the ALJ was mistaken in asserting that there was no evidence of Michaels's computer-related problems prior to 2008." Appellee Br. at 33-34 n.9. To the contrary, Michaels's medical records between December 8, 2003, and December 31, 2007, document his repeated complaints that using a computer for more than two or three hours at a time left him feeling nauseous, dizzy, and fatigued, and required him to refrain from further computer use.[3]

---

[1] In ruling on the motions, the district court adopted the February 19, 2014 Report and Recommendation of United States Magistrate Judge Gabriel W. Gorenstein "in its entirety." *Michaels v. Colvin*, No. 12 Civ. 9213 RJS GWG, 2014 WL 2086039, at *2 (S.D.N.Y. May 19, 2014).

[2] "The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

[3] *See, e.g.*, R. 366 (able to sit at computer for about two hours in August 2004); R. 394 (limited to 2 to 2.5 hours of computer use in September 2004); R. 392 (experienced worsening symptoms after working on computer for two

2

Thus, the ALJ's finding "did not comply with the ALJ's obligation to consider 'all of the relevant medical and other evidence.'" *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1545(a)(3)).

We cannot accept the Commissioner's contention that this oversight was immaterial. Mr. Flomberg testified that Michaels's past work required at least three to five hours of computer use daily and that the skills he developed in his past positions "are skills that generally are used when working in front of a computer." R. 59-60. By overlooking Michaels's history of complaints prior to 2008, the ALJ disregarded evidence that directly contradicted his conclusion that Michaels could perform his past relevant work.

Moreover, we find this error was not harmless because, after considering the record as a whole, we find that the ALJ's ultimate conclusion that Michaels was capable of performing his past relevant work was not, in fact, supported by substantial evidence. The record is replete with uncontradicted evidence that Michaels would not be able to work at a computer for three to five hours a day, including his numerous documented complaints regarding the vestibular symptoms that he experienced from extended computer use. Dr. Gerald Winkler—the neurologist who testified at Michaels's hearing—found Michaels's complaints to be "entirely consistent with the known characteristics of the effects of head trauma on the balance working of the inner ear" and observed that this condition would limit one's ability to "work[] in situations where the visual input would be similar to scrolling computers or moving rows of objects, particularly those in close proximity to the eyes." R. 40. He concluded that Michaels would only be able to perform "activit[ies] which involved *limited* use of the computer such as looking up data from time-to-time without having to scroll." *Id.* (emphasis added). Because Michaels was unable to perform his past work requiring heavy computer use, the ALJ erred in finding that Michaels was not disabled at Step Four of the disability analysis.[4]

---

hours in October 2004); R. 391 (limited to two hours on the computer and experienced a "few bad days related to [the] computer" in January 2005); R. 390 (unable to continue using the computer after ninety minutes in March 2005); R. 376 (experienced a "bad episode of nausea and dizziness" that required him to lie down for several hours after three hours of scrolling on computer in May 2007); R. 283 (experienced dizziness and tiredness from looking between computer screen and desk and from reading on the computer for a prolonged period of time in July 2007).

[4] We also cannot agree with the ALJ's alternative finding at Step Five that Michaels was "not disabled" under the medical vocational guidelines.

> [A]pplication of the grid guidelines . . . must be determined on a case-by-case basis. If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate. But if a claimant's nonexertional impairments significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments. Accordingly, where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the grids is inappropriate.

*Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (internal quotation marks and citation omitted). Under the facts of this case, Michaels's limited ability to use a computer for prolonged periods of time without experiencing nausea or dizziness is a significant nonexertional limitation that rendered application of the guidelines inappropriate.

3

## II.    Remand for Further Fact-Finding

Michaels urges this Court to vacate the decision below and remand solely for a calculation of benefits. "In . . . situations[] where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). However, "[w]here there are gaps in the administrative record . . . , we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Id.* at 82-83 (third alteration in original) (internal quotation marks omitted).

Although we find that Michaels was unable to perform his past relevant work, the record does not foreclose the possibility that there may be "significant numbers of jobs in the national economy that [he] can perform given [his] residual functional capacity, age, education, and work experience" (Step Five of the disability analysis). *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). In addition to computer-related skills, Mr. Flomberg testified that someone in Michaels's past positions might develop telephone, record-keeping, and filing skills. This testimony at least suggests that there may be other jobs that Michaels could perform that would not require heavy computer use. Mr. Flomberg did not testify, though, as to how much computer use or head or eye movement such positions would require, so Michaels's ability to work in these positions remains unclear.

Furthermore, while both the ALJ and Michaels's counsel posed hypotheticals to Mr. Flomberg regarding Michaels's ability to perform other work, these hypotheticals are not currently sufficient to resolve the Step Five inquiry, because it is not clear that they accurately represented Michaels's limitations. *See id.* at 151 ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical [at Step Five] as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and [they] accurately reflect the limitations and capabilities of the claimant involved . . . ." (second alteration in original) (internal quotation marks and citation omitted)). The ALJ's hypothetical assumed an individual whose only limits on computer use would be "rapid movements of the head" and "scrolling." R. 61. However, Dr. Winkler's testimony and Michaels's medical records show that Michaels's limitations were far more extensive; the simple acts of moving his eyes up and down and looking back and forth between a computer screen and a desk were sufficient to trigger his vestibular symptoms. Moreover, although Mr. Flomberg testified that the claimant in the ALJ's hypothetical could work as a receptionist, service representative, or telephone operator, he did not indicate the amount of computer use that these positions would require. Thus, it is also unclear whether Michaels's limitations would prevent him from working in these capacities as well.

Michaels's hypothetical to Mr. Flomberg was also inapt. Several of his hypothetical claimant's limitations were drawn from Dr. Lawrence Meiteles's May 21, 2007 Vestibular Disorder Medical Assessment of Michaels, including dizziness "on a daily basis that lasts for several hours at a time" and dizziness interfering with attention and concentration "34 to 66 percent of the time." *Compare* R. 65-66, *with* R. 568, 570. The ALJ neglected to explain the weight he assigned to this treating source. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

4

However, he appears to have partially discredited Dr. Meiteles's conclusions on the Assessment Form seemingly on the basis that they were unexplained, contradictory, or unsupported by other evidence in the record.[5] Because the limitations described by Michaels's counsel may not accurately represent Michaels's limitations, Mr. Flomberg's conclusion that the hypothetical claimant "[would not] be able to do anything" in terms of other work does not resolve the Step Five inquiry. R. 66. Accordingly, we remand to the district court with instructions to remand the matter to the Commissioner for further fact-finding as to Step Five of the disability analysis. *See, e.g.*, *Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008) ("We have remanded in . . . cases where the ALJ has . . . failed to consider relevant probative evidence."); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." (citation omitted)).

## III. Michaels's Residual Functioning Capacity

Because Michaels's residual functioning capacity is relevant at Step Five of the disability analysis, *see* 20 C.F.R. § 404.1520(e), (g), we also address the ALJ's finding that Michaels could perform light work. We conclude that this finding was not supported by substantial evidence. Light work generally requires "a good deal of walking or standing," 20 C.F.R. § 404.1567(b), "for a total of approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work—The Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6 (1983). Michaels testified that in order to stand for a prolonged period of time, he would need to "lean on something . . . to add some stability," R. 88, and Dr. Winkler testified that Michaels had been classified as a "medium fall risk." R. 41. Moreover, although the record indicates that Michaels was capable of occasionally walking for some part of each day, it does not support a conclusion that he could meet the physical demands of light work.

Implicit in the ALJ's finding that Michaels could perform light work was also a finding that Michaels could perform sedentary work, however. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work . . . ."). We conclude that this finding—that Michaels could perform sedentary work—is supported by substantial evidence. In contrast to light work, sedentary work primarily "involves sitting, [with] a certain amount of [occasional] walking and standing." *Id.* § 404.1567(a). "[P]eriods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983

---

[5] *See, e.g.*, R. 269 (Michaels stating that "my sym[p]toms . . . last up to an hour" after working on the computer); R. 393 (medical notes stating that Michaels "recovers on 1 h[our] of resting" after activity lasting more than two hours); R. 394 (medical notes stating that Michaels needed to lie down for 30 to 40 minutes after working on the computer for two or more hours); R. 568 (Dr. Meiteles stating on Vestibular Disorder Medical Assessment Form that he "c[ould] not assess" Michaels's prognosis); R. 570-72 (Dr. Meiteles stating that he did not assess "aspects of workplace stress that [Michaels] would be unable to perform" or Michaels's "functional limitations" in a workplace setting); R. 568, 570 (Dr. Meiteles indicating that Michaels's dizziness interfered with his attention and concentration 34% to 66% of an eight-hour work day, while not indicating that "mental confusion/inability to concentrate" were symptoms associated with Michaels's dizziness); R. 570, 578 (Dr. Meiteles stating that he could not assess whether "precipitating factors such as stress, exertion, sudden movement, certain kinds of light, computer monitors, etc." triggered Michaels's dizziness, despite reporting five months earlier that Michaels's "symptoms are motion provoked" and "[w]orking on the computer screen exacerbates his symptoms").

5

WL 31251, at *5.  Here, Michaels testified that sitting is not a problem for him, *see* R. 87, and Dr. Winkler testified that Michaels would be able to sit through an 8-hour workday.  The record also supports a conclusion that Michaels would be able to tolerate a combination of standing and walking for approximately two hours, particularly if those activities were performed intermittently throughout the day.  *See, e.g.*, R. 40 (Dr. Winkler testifying that Michaels would be able to walk "within the context of an office job"); R. 81 (Michaels testifying that he leaves home to walk and perform walking exercises at the gym, and that he walks a mile at a time about three times a week); R. 88 (Michaels testifying that "[s]tanding is fine . . . as long as I can lean on something . . . to add some stability").  In addition, Dr. Winkler concluded that the appropriate occupational setting for Michaels would involve a "sedentary level of work."  R. 41.  Thus, on remand, the ALJ should evaluate Michaels's ability to perform other sedentary jobs in the national economy, considering his computer use limitations.

## IV.    Step Five Determination after Remand

Although we conclude that a remand for further fact-finding at Step Five of the disability determination is necessary, we are mindful "of the often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay."  *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) ("*Butts I*") (internal quotation marks and citation omitted), *amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) ("*Butts II*").  Here, eight years have already passed since Michaels first applied for benefits.  This delay was largely occasioned by (1) the ALJ's initial failure to obtain evidence from a medical expert and a vocational expert, which required a remand from the Social Security Administration's Appeals Council, and (2) the ALJ's failure following remand to consider substantial evidence in the record of Michaels's limited ability to use a computer, which now requires a remand from this Court.  Accordingly, we instruct the district court—as we have done in a similar case requiring a remand for further fact-finding as to Step Five—to direct that further proceedings before the ALJ be completed within 120 days of the issuance of the district court's order and, that if the decision is a denial of benefits, a final decision of the Commissioner be rendered within 60 days of Michaels's appeal from the ALJ's decision.  *See Butts I*, 388 F.3d at 387 (finding that a "past delay . . . of . . . years" made "a time limit [on further proceedings before the Commissioner] . . . imperative");  *Butts II*, 416 F.3d at 103, 104, 105-06 (imposing 120-day time limit for proceedings before the ALJ and 60-day time limit for administrative appeal where the claimant "[was] entitled to benefits absent the Commissioner's providing expert vocational testimony about the availability of appropriate jobs" and the delay was unreasonable due to ALJ error).  "[I]f these deadlines are not observed, a calculation of benefits owed [Michaels] must be made immediately."  *Butts II*, 416 F.3d at 106.

We have considered the parties' remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the District Court is **VACATED** and the case is **REMANDED** to the district court for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6