Ornelas-Sanchez v. Colvin

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of February, two thousand sixteen.

PRESENT: DENNIS JACOBS,
         RICHARD C. WESLEY,
         DEBRA ANN LIVINGSTON,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
BONNIE ORNELAS-SANCHEZ,
         Plaintiff-Appellant,

         -v.-                                    15-819

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,
         Defendant-Appellee.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:          TIMOTHY E. HILLER, LAW OFFICES
                        OF KENNETH HILLER PLLC, Amherst,
                        New York.

FOR APPELLEE:           REBECCA H. ESTELLE (with Stephen
                        P. Conte on the brief) for
                        William J. Hochul, Jr., United

1

States Attorney, Western District of New York, Buffalo, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Telesca, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **VACATED and REMANDED.**

Bonnie Ornelas-Sanchez appeals from the October 21, 2014 order of the United States District Court for the Western District of New York (Telesca, J.), affirming the July 13, 2011 final administrative decision denying her application for disability benefits. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

"We undertake a plenary review of the administrative record, and our focus is on the administrative ruling more than on the district court's decision." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009). Our review is limited to determining "if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

"The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age,

education, and work experience." McIntyre, 758 F.3d at 150. We conclude that remand is necessary because the Administrative Law Judge ("ALJ") made inadequate findings at the second step of this framework.

The regulations "require application of a 'special technique' at the second and third steps of the five-step framework" when evaluating the severity of mental impairments. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Schmidt v. Astrue, 496 F.3d 833, 844 (7th Cir. 2007)). This technique requires "the reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.' If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." Id. at 266 (citations omitted) (quoting 20 C.F.R. § 404.1520a). It is mandatory that the ALJ's written decision "reflect application of the technique"; "the decision 'must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'" Id. at 266 (quoting 20 C.F.R. § 404.1520a(e)(4)).

The ALJ did not properly follow this technique when considering whether Ornelas-Sanchez had a severe impairment or combination of impairments at step two of the evaluation process. The ALJ concluded that Ornelas-Sanchez suffered from mental health problems, including anxiety and depression, and a history of substance and alcohol abuse in alleged remission. No findings were elucidated to support these conclusions, and there were no findings as to whether Ornelas-Sanchez's alleged intellectual disability constitutes a severe impairment. The ALJ simply conclusorily noted that the record showed that Ornelas-Sanchez's impairments caused more than minimal functional limitations and interfered with her ability to perform some basic work-related activities. Without more, we conclude that "[e]ffective review by this Court is frustrated by the decision's failure to adhere to the regulations." Kohler, 546 F.3d at 267. Granted, the ALJ did go on to engage with the relevant evidence in its consideration of Ornelas-Sanchez's residual functional capacity to perform work. But evaluating that evidence at step four, and not earlier,

3

means "it is not clear whether the ALJ adequately considered the entire record when determining the severity of [the] impairment." Id. at 268. The failure to make findings on this point is significant because the result of at least one IQ test in the record meets the intellectual disability requirements in the Listing of Impairments; so if this finding was credited, Ornelas-Sanchez would be disabled without proceeding to steps four and five. See id. at 266 ("If the claimant's medical impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. If so, the claimant will be found to be disabled." (citations omitted)).[1] Even at step four, it is not clear why the ALJ gave great weight to the opinion of the state agency review physician. Ultimately, the ALJ's analysis did not suffice and misapplied pertinent legal standards. See id. at 265 ("Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.") (citations omitted).

    This case is remanded so that the ALJ can make specific findings as to whether Ornelas-Sanchez made a sufficient showing that she suffered from an intellectual disability as a severe impairment, using the mandated special technique.

---

[1] Step three of the analysis appears to follow the special technique, but the passage simply determined whether the impairments the ALJ deemed severe were catalogued in the Listing of Impairments. But because no findings were made regarding whether Ornelas-Sanchez's proffered intellectual disability qualified as a severe impairment, we do not know whether the ALJ considered this a severe impairment and included this in its step three analysis. Moreover, when the ALJ evaluated the list of impairments in 20 C.F.R. § 404 Subpart P., App. 1, Pt. A, it considered only ¶¶ 12.02, 12.04, and 12.09. There is no evaluation of Ornelas-Sanchez's eligibility under ¶ 12.05 ("Intellectual Disability"), which has a structure "different from that of the other mental disorder listings." 20 C.F.R. § 404 Subpart P., App. 1, Pt. A ¶ 12.00. In sum, the ALJ's failure to adequately consider whether Ornelas-Sanchez suffered from an intellectual disability at step two of the analysis impaired the application of the framework.

4

In so doing, we note that "[w]hen there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012). Rather, the ALJ remains free to find that "in the absence of . . . drug and alcohol abuse" Ornelas-Sanchez "would not meet the requirements for those disorders." Id. at 121. But such findings are not present on this record.

Accordingly, we **VACATE** the judgment of the district court and **REMAND** with instructions for the district court to remand to the Commissioner to specifically consider whether Ornelas-Sanchez, at step two of the framework, has shown that she suffers from a severe impairment in the form of an intellectual disability.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK