**Carmella Pudetti CRUZ, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

16–CV–06250

United States District Court, W.D. New York.

Signed October 3, 2017

Howard D. Olinsky, Olinsky Law Group, Syracuse, NY, for Plaintiff.

Sergei Aden, Social Security Administration Office of General Counsel, New York, NY, Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

DAVID G. LARIMER, United States District Judge

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On January 25, 2013, plaintiff filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Dkt. # 8 at 25).[1] Her application was initially denied. (Dkt. # 8 at 38). Plaintiff requested a hearing, which was held on August 12, 2014 via videoconference before Administrative Law Judge ("ALJ") Angela Miranda. (Dkt. # 8 at 25). The ALJ issued an unfavorable decision on November 14, 2014, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. # 8 at 14). That decision became the final decision of the Commissioner when the Appeals Council denied review on February 12, 2016. (Dkt. # 8 at 1). Plaintiff now appeals.

The plaintiff has moved, and the Commissioner has cross moved for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, plaintiff's motion (Dkt. # 11) is denied, the Commissioner's cross motion (Dkt. # 14) is granted, and the Commis-

---

1. References to page numbers in the Administrative Transcript (Dkt. # 8) refer to the internal Bates-stamped numbers assigned by the parties.

sioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation. *See Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). *See* 20 CFR §§ 404.1509, 404.1520. If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, the ALJ examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4. If the impairment does, and has continued for the required duration, the claimant is disabled. If not, analysis proceeds and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR § 404.1520(e), (f). If the claimant's RFC permits her to perform relevant jobs she has done in the past, she is not disabled. If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986)). *See also* 20 CFR § 404.1560(c).

Where a claimant's alleged disability includes mental components, at steps 2 and 3 the ALJ must apply the so-called "special technique" in addition to the usual five-step analysis. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008). If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 CFR § 404.1520a(c)(3). If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document her analysis, and her written decision must "reflect application of the technique, and ... 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kohler,* 546 F.3d 260 at 266, *quoting* 20 CFR § 404.1520a(e)(2).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel,* 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Quinones v. Chater,* 117 F.3d 29, 33 (2d Cir. 1997)). Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commission-

er." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The same level of deference is not owed to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). *See also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

Here, the ALJ determined that the plaintiff had the following severe impairments: lumbar spine dysfunction; cervical spine dysfunction; thoracic spine dysfunction; headaches associated with a concussion and post-concussive syndrome; and mental impairments described as adjustment disorder with anxiety and major depressive disorder. (Dkt. # 8 at 27). The ALJ found that plaintiff was capable of performing light work, with the following limitations: capacity to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently; capacity to stand and walk for 6–8 hours in an 8–hour workday, or sit for up to 6–8 hours; ability to change position during normal break and meal periods; no more than occasional stooping, kneeling, crouching, crawling and climbing stairs and ramps; no ability to climb ladders, roped or scaffolds; capacity to reach frequently in all directions except overhead; no more than occasional overhead reaching; no more than occasional exposure to vibration and workplace hazards; capacity to understand, remember and carry out simple, routine instructions and tasks; ability to utilize common sense

in carrying out instructions and to deal with several concrete variables in standardized situations; mental ability consistent with the normal demands of a workday; capacity to appropriately interact with supervisors, coworkers and the general public; capacity to identify and avoid normal workplace hazards and adapt to routine changes in the workplace. (Dkt. # 8 at 30). When presented with this RFC determination, impartial vocational expert, Sharon Spaventa, testified that plaintiff could perform the positions of marker, cashier, and officer helper. (Dkt. # 8 at 25, 37).

Plaintiff contends that the ALJ's decision is based on legal error and is not supported by substantial evidence. (Dkt. # 1 at 2). Specifically, plaintiff claims that the ALJ did not give sufficient weight to the opinions of her treating physicians, and that the ALJ's RFC determination was not supported by substantial evidence. (Dkt. # 12). Plaintiff further argues that the ALJ inadequately assessed her credibility. *Id.* The Commissioner argues that the ALJ committed no legal error, and that substantial evidence in the record exists to support her determination that plaintiff is not disabled. (Dkt. # 14–1).

## II. The ALJ Accurately Assessed Plaintiff's RFC

The ALJ determined that plaintiff's lumbar spine dysfunction, cervical spine dysfunction, thoracic spine dysfunction, headaches, anxiety, and depression did not prevent her from performing the exertional requirements of light work, with certain limitations. (Dkt. # 8 at 30). Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of both her treating physicians and her consultative examiners, and in turn, that the ALJ's RFC finding is not supported by substantial evidence. (Dkt. # 12 at 12–13).

### 1. The ALJ Did Not Err in Declining to Give Controlling Weight to Dr. Porter

■■ A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings, and is not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). Furthermore, an ALJ may afford less weight to medical opinions that appear to be solely based on a plaintiff's subjective allegations. *Johnson v. Colvin*, 2015 WL 6738900 at *16 (E.D.N.Y. 2015), *aff'd sub nom. Johnson v. Comm'r of Soc. Sec.*, 669 Fed.Appx. 580 (2d Cir. 2016). In assigning limited weight to the opinion of plaintiff's treating primary care physician, Dr. Sarah Porter, the ALJ observed that Dr. Porter's reports were inconsistent with the other evidence of record, and that the limitations she described appeared to be based solely on plaintiff's subjective complaints. (Dkt. # 8 at 34).

The record supports the ALJ's assertion that Dr. Porter's opinions are inconsistent with plaintiff's medical records and self-reported activities of daily living.

In August 2012, plaintiff was involved in a motor vehicle accident. (Dkt. # 8 at 31). Beginning with the accident and continuing as recently as May 2014, Dr. Porter consistently reported that plaintiff was very limited in her ability to sit, stand, and walk. On May 30, 2014, Dr. Porter opined that plaintiff is "limited to a less than sedentary capacity." (Dkt. # 8 at 34). Specifically, Dr. Porter noted that plaintiff was able to: sit for ten minutes at a time and two hours total in an eight-hour workday; stand or walk five minutes at a time and zero hours total in an eight-hour workday; occasionally lift and carry less than ten pounds, but never ten pounds or more; and use her hands and fingers fifty percent of the time and her arms for reaching ten percent of the time. (Dkt. # 8 at 583–85). Dr. Porter concluded that plaintiff was not physically capable of eight-hour, five-day a week employment. *Id.* However, these limitations are not supported by any objective medical evidence, and appear to have be based solely on plaintiff's subjective complaints of pain. (Dkt. # 8 at 503–36, 583–85).

Dr. Porter's conclusions are also contrary to other evidence of record, including the medical reports of other treating and examining physicians. As early as 2012, in the weeks following plaintiff's accident, Dr. Pierre Girgis, a consultative neurologist, noted that although plaintiff complained of "pain everywhere," she had full range of motion in her musculoskeletal system in general and her neck in particular, and no neurological deficits. Dr. Girgis recommended physical therapy to "aid in ... relief" of her reported neck and low back pain, with pain management therapy recommended only if physical therapy proved unsuccessful. (Dkt. # 8 at 421–22). In June and July 2014, Dr. Jennifer Gargano, a consultative examiner, found that plaintiff had full motor strength in her upper and lower extremities and legs, full range of motion in her neck, normal sensation, normal reflexes, and a normal gait, with no muscle spasms, and a negative straight leg raising test result. (Dkt. # 8 at 601–604).

Dr. Porter's reports are also inconsistent with plaintiff's own account of her conditions. Throughout the course of treatment, Dr. Porter maintained that plaintiff was unable to work and limited to sedentary activities. Plaintiff, however, consistently reported improvements in her headaches, as well as reduced back and neck pain. *See, e.g.,* Dkt. # 8 at 346–47, 508, 512, 528, 531. Dr. Porter does not appear to have accounted for these reports in her medical assessments. Instead, Dr. Porter seemingly credited plaintiff's own accounts only when plaintiff claimed that her pain worsened.

Because Dr. Porter's reports were inconsistent with substantial record evidence, are unsupported by any objective testing and in fact appear to conflict with objective testing by other physicians, and relied only on plaintiff's subjective complaints, the ALJ did not err in declining to afford controlling weight to Dr. Porter's conclusions regarding plaintiff's ability (or inability) to sit, stand, and walk.

### 2. The ALJ's Findings Are Supported By Substantial Evidence

#### A. Physical RFC

■ Plaintiff claims that the ALJ's decision is not supported by substantial evidence, arguing that the ALJ erroneously rejected the opinions of treating and consultative physicians, and instead relied on her own "lay opinion." (Dkt. # 12 at 12–21). However, the ALJ's findings were informed by reports from several physicians, and the totality of plaintiff's medical records is consistent with the ALJ's decision. The ALJ considered the effects of plaintiff's headaches, as well as back and neck impairments on her ability to work, and used the record to determine appropriate limitations. (Dkt. # 8 at 30). Just a few months after plaintiff's August 2012 accident, consultative chiropractor Dr. Sean Higgins noted that plaintiff could lift up to ten pounds. (Dkt. # 8 at 293). Plaintiff's medical records establish that in the years following Dr. Higgins' report, her condition improved considerably. A July 2014 report from consultative pain management specialist, Dr. Gargano, indicates that plaintiff was not in acute distress, appeared "well-developed," and exhibited full strength. (Dkt. # 8 at 601). Plaintiff herself indicated on several occasions that her neck and back pain, as well as headaches, were improving. *See* Dkt. # 8 at 346–47 (on February 5, 2014, plaintiff "states that she 'feels a lot better' ... frequency and intensity of pain has decreased in her neck, mid back and low back, as well as a

decrease in headache intensity, though it remains constant ... this is the best she has felt since her auto accident ... is very happy with the treatment and notes continued improvement"). *See also* Dkt. # 8 at 516, 519, 523, 531, 614. In short, there is no objective evidence of record that plaintiff's exertional limitations extend beyond those determined by the ALJ.

#### B. Mental RFC

■ The ALJ's assessment of plaintiff's mental impairments is also supported by substantial evidence in the record. Dr. Porter's and treating Nurse Luis Berrios' examinations of plaintiff do not speak extensively to plaintiff's mental capacity, and the ALJ correctly relied upon the reports of treating counselor Wade Turnipseed and examining psychologist Dr. Christine Ransom in assessing plaintiff's mental RFC. (Dkt. # 8 at 35–36). These reports indicated that plaintiff had moderate to marked limitations in mental functioning.

Plaintiff claims that the ALJ's mental RFC determination is not supported by substantial evidence, arguing that the ALJ erred by failing to explain why she concluded plaintiff had fewer mental limitations than those suggested by the opinions of plaintiff's counselor and consultative examiner. (Dkt. # 18).

The ALJ did not err in giving limited weight to the opinions of Mr. Turnipseed and Dr. Ransom, who both reported that plaintiff had moderate to marked limitations in mental functioning. (Dkt. # 8 at 316–19, 591–93). As stated earlier, when medical opinion evidence is not well-supported by objective medical findings, the ALJ may give limited weight to a physician's opinion. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). As the ALJ noted, the objective mental status exam portion of Mr. Turnipseed's report does not support the marked mental limitations

ultimately described by both Mr. Turnipseed and Dr. Ransom. (Dkt. # 8 at 35–36). For instance, Mr. Turnipseed indicates that the plaintiff has moderate to marked limitations in mental capacity in one report, (Dkt. # 8 at 592), but a more recent mental status objective exam conducted by Mr. Turnipseed indicates that plaintiff had a normal thought process and good concentration; and exhibited a normal speech rate, speech tone, good concentration, and intact judgment. (Dkt. # 8 at 619). In any event, because Mr. Turnipseed is not an acceptable medical source, his opinion is not entitled to controlling weight. *See* 20 C.F.R. § 404,1502(a).

In finding that plaintiff's mental impairments, individually, and in combination, do not meet or medically equal the criteria of the listings, the ALJ was required to assess the severity of plaintiff's impairments under the "paragraph B" criteria. In doing so, the ALJ assessed whether the impairments resulted in at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Dkt. # 8 at 29). A "marked" limitation is defined as more than moderate, but less than extreme. (*Id.*). "Repeated episodes of decompensation, each of extended duration, means three episodes within [one] year, or an average of every [four] months, each lasting for at least [two] weeks. (*Id.*).

The ALJ determined that plaintiff has mild restrictions in daily living activities because she is able to care for herself, cook, do household chores, and shop. (*Id.*). Plaintiff also has mild restrictions in social functioning because generally, she reported socializing with friends, and treatment records show that she was conversant, and capable of making direct eye contact. (*Id.*).

Plaintiff has moderate difficulties with concentration and persistence or pace. (*Id.*). Treatment notes demonstrate that the claimant had moderate limitations with regard to attention and concentration. (*Id.*). However, records also indicate that plaintiff was of average intelligence, and still could engage in ordinary daily activities, such as managing a household and caring for her herself and her son. (*Id.*). Lastly, plaintiff has had no periods of decompensation that were of extended duration. (*Id.*). The plaintiff does not have a marked limitation in at least two areas, or one marked limitation and repeated episodes of decompensation of an extended duration, thus, the "paragraph B" criteria are not met.

A review of the entire record demonstrates that the limitations included in plaintiff's RFC-the ability to understand and carry out simple tasks, maintain concentration over the course of a normal workday, and relate appropriately with colleagues—are supported by substantial evidence in the record, and the record does not suggest any greater level of limitation. Therefore, the Court finds that the ALJ correctly determined that plaintiff had the RFC to perform light work subject to the limitations described above.

### III. Substantial Evidence Supports the ALJ's Finding that Plaintiff Is Not Fully Credible

To analyze plaintiff's symptoms, the ALJ followed the mandatory two-step process in which she determined whether there was an underlying medically determinable impairment that could be reasonably expected to cause plaintiff's symptoms. (Dkt. # 8 at 31). Next, the ALJ evaluated the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limited plaintiff's ability to function. (*Id.*). The ALJ's determination that plaintiff's statements about the intensity, persistence, and

limiting effects of her symptoms are not credible is supported by substantial evidence. An ALJ should consider seven factors to assess plaintiff's credibility, however the ALJ need not expressly discuss each factor should she provide reasons that are "sufficiently specific to conclude that [s]he considered the entire evidentiary record in arriving at h[er] determination." *Wischoff v. Astrue*, 2010 WL 1543849 at *7 (W.D.N. Y. Apr. 16, 2010). Here, the ALJ discussed plaintiff's daily activities, aggravating factors, and treatment history. (Dkt. # 8 at 31–32).

Initially, plaintiff's self-reported daily activities, which include cooking, cleaning, doing laundry, showering, caring for her son, exercising several times per week, and socializing with friends, are inconsistent with her reports that she is "unable to stay standing" for more than one minute. (Dkt. # 8 at 320, 512). Also, the record reveals that plaintiff has consistently failed to follow the physicians' recommended treatments—wearing a cervical collar and wrist brace, going to counseling, going to physical therapy sessions, and receiving steroid injections—indicating that plaintiff's symptoms are tolerable without the prescribed treatments aimed at mitigating them. (Dkt. # 8 at 265, 542, 545). I find no reason to disturb the ALJ's findings that plaintiff's testimony concerning the extent of her limitations was not credible.

## CONCLUSION

For the reasons set forth above, the Commissioner's cross motion for judgment on the pleadings (Dkt. # 14) is granted. Plaintiff's motion for judgment on the pleadings (Dkt. # 11) is denied, and the complaint is dismissed, with prejudice.

IT IS SO ORDERED.