ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Dawn M. Reithel ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 8; Dkt. 10). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 8) is denied.
BACKGROUND
Plaintiff protectively filed applications for DIB and SSI on December 2, 2013. (Dkt. 6 at 90).[1] In both applications, Plaintiff alleged disability beginning on June 29, 2013. (Id. ). Plaintiff's applications were initially denied on February 28, 2014. (Id. ). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Yvette N. Diamond on October 20, 2015. (Id. at 10-64). On November 4, 2015, the ALJ issued an unfavorable decision. (Id. at 90-101). The Appeals Council denied Plaintiff's request for review on February 7, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-8). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the *908 record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).
II. Disability Determination
An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. See Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured *909 status requirements of the Act through December 31, 2016. (Dkt. 6 at 92). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 29, 2013, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease, left ulnar nerve impingement, carpal tunnel syndrome, fibromyalgia, major depressive disorder, and anxiety disorder. (Id. ). The ALJ also found that Plaintiff had the non-severe impairment of asthma. (Id. at 93). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (Id. ). The ALJ particularly considered the criteria of Listings 1.04, 11.14, 12.04, and 12.0 in reaching his conclusion, as well as the "paragraph B" and "paragraph C" criteria with respect to Plaintiff's mental impairments. (Id. at 93).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform "light work," with the exception that Plaintiff can:
[L]ift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six out of eight hours; and sit for six out of eight hours. The claimant can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders. She can perform frequent reaching, handling and fingering, but can only occasionally reach overhead. She requires the option to change positions between sitting and standing every half hour, and cannot have concentrated exposure to temperature extremes or respiratory irritants. The claimant is limited to simple, routine tasks and low stress work defined as occasional decisionmaking and occasional changes in work setting.
(Id. at 95). In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as the opinion evidence provided. (Id. ).
Among the materials considered was opinion evidence from examining neurosurgeon Dr. Gordon Whitbeck. (Id. at 98). In 2013, Dr. Whitbeck opined that Plaintiff "is considered to have a temporary marked partial disability and to be capable of working at a capacity designated as light rather than sedentary." (Id. at 286-87). The ALJ noted that Dr. Whitbeck observed that Plaintiff's strength was "5/5 throughout [ ] the upper and lower extremities" (id. at 98, 285), and that chiropractic records also describe reduction in cervical spine range of motion, supporting lifting restrictions (id. at 98, 281). The ALJ also stated that the consultative examiner, Dr. Seema Khaneja, had described Plaintiff's gait as normal, consistent with Dr. Whitbeck's opinion. (Id. at 98, 374). The ALJ assigned "great weight" to Dr. Whitbeck's opinion. (Id. at 98).
The ALJ gave "little weight" to the opinion of Plaintiff's treating chiropractor Matthew Alexander, D.C. (Id. ). The ALJ explained that Dr. Alexander had opined that "the claimant cannot work," and that issue is reserved to the Commissioner. (Id. ). The ALJ further noted that a chiropractor is not an acceptable medical source under the regulations. (Id. ). However, the ALJ also noted that Dr. Alexander described "only mild tenderness to the cervical and trapezius muscles and a mild neck lean in January 2014, suggesting little interference with the claimant's functioning." (Id. ).
The ALJ also gave "some weight" to the opinion of Dr. Elias M. Nicolas, an independent medical examiner, insofar as Dr. *910 Nicolas's opinion regarding Plaintiff's lifting restrictions was consistent with other medical evidence in the record. (Id. ). The ALJ afforded "some weight" to consultative examiner Dr. Khaneja's opinion that Plaintiff had limited range of motion in her arms, supporting some restrictions in reaching, pushing, and pulling. (Id. ).
With respect to Plaintiff's psychological impairments, the ALJ assigned "only some weight" to the opinion of Dr. Adam Brownfield, the psychological consultative examiner. (Id. at 98-99). Dr. Brownfield opined that Plaintiff has no restrictions in social functioning, following simple or complex directions, sustaining attention, or tolerating work stress. (Id. at 98, 359). The ALJ noted that Plaintiff's "tearfulness in July 2013 supports greater restriction in stress tolerance than Dr. Brownfield found," and an evaluation in July 2014 demonstrates "greater difficulty with attention and concentration than Dr. Brownfield indicates." (Id. at 99).
The ALJ also assigned "some weight" to the Global Assessment of Functioning ("GAF")[2] scores assigned by various treatment providers between June 2014 and September 2015. (Id. ). The ALJ explained that notes from December 2014 describe "fair judgment, attention, concentration, and insight," consistent with a GAF score of 55. (Id. ). The ALJ assigned "limited weight" to the opinion of State agency psychological consultant T. Inman-Dundon, Ph.D. (Id. ). Dr. Inman-Dundon opined in February 2014 that Plaintiff had no significant mental limitations; however, Dr. Inman-Dundon did not directly examine Plaintiff, and the ALJ concluded that Dr. Inman-Dundon's opinion was inconsistent with more recent opinions by mental health providers. (Id. ). However, because Dr. Inman-Dundon's opinion was consistent with Plaintiff's testimony regarding her social functioning, the ALJ assigned it limited weight. (Id. ).
At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 100). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of order caller and ticket taker. (Id. at 101). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. ).
II. Weight Assigned to Dr. Whitbeck's Opinion
"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin , 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." Carney v. Berryhill , No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole. See id. at *7 ("Dr. Liu's opinion was not stale ... because it was consistent *911 with Dr. Liu's clinical examination and with the record as a whole.").
Plaintiff argues that Dr. Whitbeck's opinion, rendered in August 2013, is stale because it does not take into account subsequent medical evidence in the record that is contradictory or indicates that Plaintiff's condition worsened over time. (Dkt. 8-1 at 24-25). For example, Plaintiff argues that a November 26, 2013, CT of the cervical spine and cervical myelogram showed significant findings for which Dr. Whitbeck's opinion did not account. (Id ; Dkt. 6 at 367-70). Furthermore, Plaintiff cites Dr. Alexander's opinion, rendered in May 2015, that Plaintiff was limited to walking one mile, sitting 30 minutes, and standing 30 minutes, and that she suffered from weakness in both upper extremities and decreased cervical motion in left rotation and left bending. (Dkt. 8-1 at 24-25; Dkt. 6 at 561). The medical records indicate that between August 2013 and May 2015, Plaintiff suffered, among other things, a fall that exacerbated her symptoms. (Dkt. 6 at 559).
Defendant responds that Dr. Whitbeck's opinion is not stale because it is consistent with additional substantial medical evidence in the record, including subsequent opinions of Dr. Rifai, Dr. Carr, Dr. Evans, Nurse Practitioner Prasad, Dr. Tolomeo, and Physician Assistant ("PA") Inzana. (Dkt. 10-1 at 20-24). Defendant also notes that, contrary to Plaintiff's position, Dr. Whitbeck's opinions did take into account the results of Plaintiff's CT and cervical myelogram. (Id. at 23-24).
The Court agrees with Defendant that substantial evidence in the record supports Dr. Whitbeck's opinion that Plaintiff's strength was "5/5 throughout [ ] the upper and lower extremities." (Dkt. 6 at 285). In March 2014, Dr. Rifai at Ontario Neurology Associates opined that Plaintiff had "normal" motor strength. (Id. at 381). In May 2014, Dr. Carr, an orthopedic surgeon, examined Plaintiff and concluded that Plaintiff had normal range of motion in her cervical spine with full flexion, extension, lateral deviation, and rotation and opined that Plaintiff had no motor deficits. (Id. at 567). That same month, Dr. Persaud at The Maxwell Boev neurosurgery clinic opined that Plaintiff's motor strength was intact throughout the upper and lower extremities in all muscle groups and did not suggest surgical intervention. (Id. at 532). In June 2014, Dr. Evans at Neurology Associates of Rochester noted that Plaintiff's strength was "symmetric and full throughout." (Id. at 527). In February 2015, Dr. Tolomeo at Ontario Neurology Associates concluded that Plaintiff's motor strength was "5/5." (Id. at 536). Thus, abundant medical evidence in the record documenting clinical examinations that occurred subsequent to Dr. Whitbeck's examination supports Dr. Whitbeck's opinion.
Plaintiff also argues that the ALJ improperly concluded, based on Dr. Whitbeck's vague opinion, that Plaintiff was capable of light, rather than sedentary, work. (Dkt. 8-1 at 22). According to Plaintiff, such a determination is reserved for the ALJ after reviewing objective medical evidence, and there is no indication that Dr. Whitbeck used the term "light" in accordance with the SSA's definition of light work. (Id. at 22-23). Plaintiff contends that the ALJ's failure to question whether "light duty" work, as used by Dr. Whitbeck, equated to "light work" under the regulations was harmful, because if Plaintiff was found capable of only sedentary work, she would likely have been found disabled. (Id. at 23). Defendant responds that it is Plaintiff's burden to demonstrate that she cannot perform the RFC as found by the ALJ and that Plaintiff's "speculative ruminations" fail to establish that she cannot perform light work. (Dkt. 10-1 at *912 26). Moreover, Defendant argues that the record contains substantial evidence that Plaintiff could perform light work, as defined in the agency regulations. (Id. ).
The Court agrees with Defendant that there is ample evidence in the record to support the ALJ's RFC determination. Light work is defined in the agency regulations as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.
20 C.F.R. § 404.1567. In this case, the ALJ determined that Plaintiff was capable of light work with certain additional restrictions. (Dkt. 6 at 94-95). The record evidence, even without Dr. Whitbeck's assessment that Plaintiff "is cable of working in a capacity designated as light" (id. at 285), supports the RFC determination. At the hearing before the ALJ, Plaintiff testified that she could lift at least 20 pounds. (Id. at 44). Dr. Whitbeck observed that Plaintiff had no gait disturbance, normal strength and tone, and full range of motion in her cervical spine, despite her abnormal head position. (Id. at 285, 290, 390, 426, 466). Dr. Carr, Dr. Evans, Dr. Tolomeo, and PA Inzana reached the same conclusions. (Id. at 526-28, 535-36, 538-39, 569). Those medical findings comport with the ALJ's RFC determination.
III. The ALJ Did Not Err in Failing to Develop the Record
"The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." Shaw v. Chater , 221 F.3d 126, 131 (2d Cir. 2000). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa , 168 F.3d at 79 n.5 (quoting Perez v. Chater , 77 F.3d 41, 48 (2d Cir. 1996) ). "[T]he ALJ need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record." Genito v. Comm'r of Soc. Sec. , No. 7:16-CV-0143, 2017 WL 1318002, at *8 (N.D.N.Y. Apr. 7, 2017).
Further, although an ALJ cannot substitute her own lay opinion in place of established acceptable medical authorities or treating sources, Morseman v. Astrue , 571 F.Supp.2d 390, 397 (W.D.N.Y. 2008), she is entitled to weigh all of the evidence available to make an RFC determination that is consistent with the record as a whole, Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ's conclusion "may not perfectly correspond with any of the opinions of medical sources cited in [her] decision." Id. It is within the ALJ's discretion to resolve genuine conflicts in the evidence, Veino v. Barnhart , 312 F.3d 578, 588 (2d Cir. 2002), and, in doing so, to "choose between properly submitted medical opinions," Balsamo v. Chater , 142 F.3d 75, 81 (2d Cir. 1998).
Plaintiff argues that the ALJ had a duty to develop the record because she did not rely on any medical opinion in formulating the psychiatric portion of the RFC. (Dkt. 8-1 at 25-26). Plaintiff contends that because the ALJ afforded the psychological consultative examiner only some weight, gave the opinions of Plaintiff's treatment providers some weight, and gave the State *913 agency psychological consultant limited weight, the ALJ should have ordered a new consultative examination. (Id. ). Defendant responds that the ALJ properly exercised her discretion in resolving the evidentiary conflicts in the record and making an RFC assessment that is supported by substantial evidence. (Dkt. 10-1 at 27).
The Court concludes that the ALJ was not required to further develop the record. The psychiatric portion of the ALJ's RFC determination is supported by substantial evidence. The ALJ found that Plaintiff is capable of "simple, routine tasks and low stress work defined as occasional decisionmaking and occasional changes in work setting." (Dkt. 6 at 95). The ALJ gave some weight to Dr. Brownfeld's opinion insofar as he opined that Plaintiff "has no restrictions in social functioning, following simple or complex directions, [and] sustaining attention," but concluded that other evidence in the record supports greater restriction in stress tolerance than Dr. Brownfeld found. (Id. at 98-99). The ALJ also credited the portion of the opinion of Ms. Ersteniuk, Plaintiff's therapist, observing that Plaintiff has fair judgment, attention, concentration, and insight. (Id. at 99). Finally, the ALJ accorded limited weight to Dr. Inman-Dundon's opinion that Plaintiff has no significant mental limitations, insofar as the ALJ found that Plaintiff's own testimony supported social functioning consistent with Dr. Inman-Dundon's opinion. (Id. ).
The aspects of each psychiatric opinion that the ALJ credited are supported by the record as a whole. In addition to the portions of the opinions, described above, that the ALJ afforded some weight, Plaintiff stated in her disability report that she has no difficulty paying attention, can follow written and spoken instructions, and has no problem getting along with people in positions of authority. (Id. at 214). Furthermore, Dr. Evans opined that Plaintiff had good concentration, no language deficits, intact memory, normal thought process, and a good fund of knowledge. (Id. at 527).
The Court rejects Plaintiff's argument that the ALJ did not account for Plaintiff's limitations as a result of depression and anxiety. (See Dkt. 8-1 at 29). The ALJ considered all the opinions regarding Plaintiff's mental health limitations and appropriately concluded that Plaintiff could perform only "low stress" work. (Dkt. 6 at 95). That finding is consistent with the opinion and treatment evidence in the record. The Court concludes that there is sufficient evidence in the record to support the ALJ's conclusion with respect to the psychiatric portion of her RFC determination.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

The GAF is a scale "promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.' " Kohler v. Astrue , 546 F.3d 260, 262 n.1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 2000) ). The SSA has limited use of GAF scores, and ALJs are instructed to treat those scores as opinion evidence. Mainella v. Colvin , No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014).