ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Latoya Allen ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB"), child's insurance benefits ("CIB"), and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 8) is denied.
BACKGROUND
Plaintiff protectively filed her applications for DIB, CIB, and SSI on April 9, 2014. (Dkt. 6 at 138, 213-15).[1] Thereafter, Plaintiff filed a second application for CIB on April 22, 2014, based on disability. (Id. at 138). In her applications, Plaintiff alleged disability beginning March 31, 2013, due to "anxiety, paranoia, hears voices, depression, violent." (Id. at 138, 216-17). Plaintiff's applications were initially denied on May 28, 2014. (Id. at 138, 263-70). A hearing was held before administrative law judge ("ALJ") Bruce S. Fein on July 11, 2016, in Rochester, New York. (Id. at 138, 178-212). On August 17, 2016, the ALJ issued an unfavorable decision. (Id. at 135-152). Plaintiff requested Appeals Council review; her request was denied on July 12, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 6-9). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions *333 were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.
*334 Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff had not attained the age of 22 as of March 31, 2013, the alleged disability onset date, and that Plaintiff met the insured status requirements of the Act through June 30, 2015. (Dkt. 6 at 141). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 31, 2013, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of "lumbago, a depressive disorder, and an anxiety disorder." (Id. at 142). The ALJ further found that Plaintiff's medically determinable impairments of "rule-out slight levoscoliosis of the thoracolumbar spine, shoulder pain, knee pain, ankle pain, hand, wrist, and finger pain, headaches, weight gain, mild obesity, fatigue, pregnancy, abdominal pain, cellulitis, dermatitis, conjunctivitis, and sinusitis" were non-severe. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 142-43). The ALJ particularly considered the criteria of Listings 1.04, 12.04, and 12.06 in reaching his conclusion. (Id. at 142-44).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), because Plaintiff:
is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. In addition, [Plaintiff] is limited to simple, routine, and repetitive tasks, and she is able to work at a low-stress job, which is defined as a job with occasional changes in the work setting and a job that requires occasional decision-making and occasional judgment. [Plaintiff] is able to occasionally interact with co-workers, supervisors, and the public.
(Id. at 144-45). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 149).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of office helper, small products assembler, and mail clerk. (Id. at 150-51). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 151).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ erred by granting the greatest weight to the non-examining review physician, S. Shapiro, Ph.D., over the opinions of Adam Brownfeld, Ph.D., a consultative examiner, and Jamie-Lynn Seldon, LCSW, Plaintiff's therapist; (2) the ALJ erred by failing to include in the RFC finding limitations for Plaintiff's ability to maintain attention and concentration; and (3) the ALJ erred by rejecting the opinion of Andrea Jean Cottrell, *335 N.P. (hereinafter, "NP Cottrrell"), relating to Plaintiff's ability to work and, even if the rejection was proper, the ALJ was required to develop the record. (Dkt. 8-1 at 12-21). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.
A. Weighing of Opinion Evidence from Dr. Shapiro. Dr. Brownfeld. and Ms. Seldon
Plaintiff first argues that the ALJ erred in assigning "very significant weight" to the opinion of Dr. Shapiro, a non-examining source, and lesser weight to the opinions of Dr. Brownfeld and Ms. Seldon. (Dkt. 8-1 at 12-15). Under the Commissioner's regulations, an ALJ is required to "evaluate every medical opinion [he] receives." 20 C.F.R. § 416.927(c). When weighing a medical opinion from a non-treating source, such as a consultative examiner, an ALJ is required to consider the following:
(1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.
Bump v. Comm'r of Soc. Sec. , No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *3, 2016 U.S. Dist. LEXIS 149419, at *8-9 (N.D.N.Y. Oct. 28, 2016). Further, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants , because those consultants are deemed to be qualified experts in the field of social security disability." Id. at *4, 2016 U.S. Dist. LEXIS 149419, at *9 (emphasis added). "Although an examining source is 'generally' afforded more weight than a non-examining source, an ALJ is allowed to afford a non-examining source more weight than an examining one." Christy v. Comm'r of Soc. Sec. , 2015 WL 6160165, at *9, 2015 U.S. Dist. LEXIS 142331, at *20-21 (N.D.N.Y. Sept. 24, 2015), adopted , 2015 U.S. Dist. LEXIS 142228 (N.D.N.Y. Oct. 20, 2015). For example, an ALJ may assign greater weight to the opinion of a non-examining source when it is better supported by the record. See Ridosh v. Berryhill , No. 16-CV-6466L, 2018 WL 6171713, at *6, 2018 U.S. Dist. LEXIS 199661 at *17 (W.D.N.Y. Nov. 26, 2018) ("a non-examining physician opinion may be entitled to more weight than the opinion of an examining physician ... such as where the opinion of a treating or examining physician is contradicted by substantial evidence in the record.") (citation omitted); Florez v. Apfel , No. CV 97-3052, 1998 WL 760334, at *7, 1998 U.S. Dist. LEXIS 16264, at *18 (E.D.N.Y. Aug. 31, 1998) ("Given that [the medical expert's] opinions are supported by the record, and [the treating physician's] opinion that the [claimant] was disabled is not, the ALJ was free to find the non-examining expert's testimony persuasive.").
Because they are not acceptable medical sources, the opinions of social workers are not entitled to controlling weight. Conlin v. Colvin , 111 F.Supp.3d 376, 386 (W.D.N.Y. 2015) (citing Piatt v. Colvin , 80 F.Supp.3d 480, 493 (W.D.N.Y. 2015) ). However, an ALJ "should consider information from 'other sources,' such as social workers, which 'may also help ... to understand how [the claimant's] impairment affects [her] ability to work.' " Krach v. Colvin , No. 13-CV-1089 (GTS/CFH), 2014 U.S. Dist. LEXIS 146922, at *14 (N.D.N.Y. Aug. 26, 2014) (quoting 20 C.F.R. § 404.1513(e) ) (alterations in original), adopted , *336 2014 WL 5290368, 2014 U.S. Dist. LEXIS 146724 (N.D.N.Y. Oct. 15, 2014). The Commissioner is "free to decide that the opinions of 'other sources'... are entitled to no weight or little weight," but "those decisions should be explained." Piatt , 80 F.Supp.3d at 493 (citation omitted). "The amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." Williams v. Colvin , No. 15-CV-6119-FPG, 2016 WL 1466562, at *4, 2016 U.S. Dist. LEXIS 50448, at *13 (W.D.N.Y. Apr. 14, 2016). An ALJ is not free to disregard a medical opinion solely on the basis that the opinion is from a nonmedical source. Kelly v. Astrue , No. 09-CV-1359, 2011 WL 817507, at *5, 2011 U.S. Dist. LEXIS 21009 at *15-16 (N.D.N.Y. Jan. 18, 2011) (ALJ was not free to simply disregard a licensed clinical social worker's assessment on the basis that he was not an acceptable medical source alone), adopted , 2011 WL 807398, 2011 U.S. Dist. LEXIS 20965 (N.D.N.Y. Mar. 2, 2011).
In this case, Dr. Shapiro, an agency psychological review consultant, reviewed Plaintiff's record in May 2014. (See Dkt. 6 at 216-26). Dr. Shapiro found that, despite Plaintiff's moderate limitations in accepting instructions and responding appropriately to criticism from supervisors, she had no significant limitations in her ability to interact appropriately with the general public, ask simple questions and request assistance, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (Id. at 223). Dr. Shapiro further opined that Plaintiff had no understanding and memory limitations, no sustained concentration and persistence limitations, and no adaptation limitations. (Id. at 222-23). In terms of Plaintiff's understanding and memory limitations, Dr. Shapiro explained that Plaintiff's recent and remote recall for discrete data was intact, with only slight difficulty with reverse digits, and that her memory skills were intact for day-to-day activities. (Id. at 222). For concentration and persistence, Dr. Shapiro explained that Plaintiff cares for two young children, her performance at her consultative exam was not credible, and her level of day-to-day functioning showed that her attention and concentration skills were intact. (Id. ). Dr. Shapiro concluded that Plaintiff "has a range of skills on par with cognitive level." (Id. at 223).
In the written determination, the ALJ thoroughly discussed Dr. Shapiro's opinion (id. at 147) and afforded it "very significant weight," based on her expertise, her review of Plaintiff's medical records, and the relative consistency of her opinion with the overall evidence, including Plaintiff's history of intermittent mental health treatment and reported good response to medication management (id. at 148). The ALJ specifically identified the opinions relating to Plaintiff's functional limitations issued by Ms. Seldon and Michelle DiRoumo, LMSW, as being consistent with Dr. Shapiro's assessed limitations. (Id. ).
The Court has reviewed the opinion of Dr. Shapiro and finds that the ALJ's weighing of her opinion was proper. First, it is clear to the Court that the ALJ took into account the required considerations for weighing opinions from consultative sources. Second, Plaintiff contends that it is "improper" for an ALJ to rely on a non-treating, non-examining medical source and credit a state consultant over examining physicians. (See Dkt. 8-1 at 13). However, contrary to Plaintiff's assertions, it is well-settled that the opinion of a non-examining source may be credited over *337 that of an examining physician, particularly where the examining source's opinion is contradicted by the record. Ridosh , 2018 WL 6171713, at *6, 2018 U.S. Dist. LEXIS 199661, at *17. Similarly, an ALJ may rely on the opinion of a non-examining medical source in formulating the RFC, because they "are deemed to be qualified experts in the field of social security disability." Bump , 2016 WL 6311872, at *4, 2016 U.S. Dist. LEXIS 149419, at *8-9. Here, the ALJ thoroughly explained his reasoning for affording Dr. Shapiro's opinion "very significant weight." He also explained that the opinions of examining sources were not consistent with other evidence in the record. (See Dkt. 6 at 148 ("I give reduced weight to Dr. Brownfeld's May 2014 medical source statement because ... the opinions are inconsistent with the longitudinal medical evidence in the record, including the well-supported opinions of Dr. Shapiro, who pointed out that Dr. Brownfeld's limitations are not consistent with the preponderance of the evidence."); id. (giving significant weight to opinions of Ms. Seldon and Ms. DiRoumo relating to Plaintiff's function limitations, but noting that their opinions relating to Plaintiff's inability to work "are inconsistent with the balance of the evidence, including their own specific functional assessments and the well-supported opinions of Dr. Shapiro."); id. at 148-49 (giving reduced weight to April 2014 medical source statement completed by Ms. Seldon, because it contradicted the opinions she issued in a county employability assessment she completed in the same month, and was inconsistent with mental status examination clinical findings and mental health treatment notes) ).[2] Plaintiff does not make any meaningful argument as to why Dr. Shapiro's opinion should not be credited over those of examining sources in the record, other than to make the conclusory statement that the opinion of an examining source is entitled to more weight than that of a non-examining source. The ALJ's weighing of these opinions was proper and adequately explained. Remand on this basis is not warranted.
B. Incorporation of Limitations for Plaintiff's Attention and Concentration
Plaintiff's next argument is that the ALJ erred by failing to include in the RFC finding limitations for maintaining attention and concentration. (Dkt. 8-1 at 15). Plaintiff points specifically to the April 2014 opinion of Ms. Seldon, which the ALJ
*338 gave "significant weight," in arguing that such limitations were necessary. (Id. at 15).
On April 28, 2014, Ms. Seldon completed a psychological assessment for determination of employability for the Monroe County Department of Human Services, in which Ms. Selden found that Plaintiff had normal functioning in the following categories: following, understanding, and remembering simple instructions and directions; performing simple and complex tasks independently; regularly attending to a routine and maintaining a schedule; and maintaining basic standards of hygiene and grooming. (Dkt. 6 at 688). Ms. Selden found that Plaintiff was moderately limited (meaning unable to function between ten to twenty-five percent of the time) in maintaining attention and concentration for rote tasks, and in her ability to perform low stress and simple tasks. (Id. ). Ms. Selden did not find that Plaintiff was "very limited" or "insufficient" in any category of mental functioning. (Id. ).
In the written determination, the ALJ discussed Ms. Selden's opinion relating to Plaintiff's moderate limitations for maintaining attention and concentration for rote tasks. (Id. at 147). The ALJ explained that he gave "significant weight to the specific functional assessments of Ms. Seldon and Ms. DiRoumo in county employability reports due to their examinations of the claimant and the relative consistency of the opinions with each other and the overall medical evidence, including the well-supported opinions of psychologist Dr. Shapiro...." (Id. at 148).
As noted above, the RFC limits Plaintiff to simple, routine, and repetitive tasks (see id. at 145), which Plaintiff acknowledges (see Dkt. 8-1 at 15). The Court concludes that the limitation for performing simple, routine, and repetitive tasks is consistent with Ms. Selden's assessment of Plaintiff's mental functioning, including her opinion that Plaintiff has moderate difficulties in maintaining attention and concentration, as well as other medical opinion evidence in the record. See Robinson v. Comm'r of Soc. Sec. , No. 1:16-CV-00835 (MAT), 2018 WL 3372962, at *3, 2018 U.S. Dist. LEXIS 115387, at *7 (W.D.N.Y. July 11, 2018) ("[T]he ALJ's RFC assessment properly incorporated Plaintiffs moderate limitations in concentration, persistence, or pace by limiting Plaintiff to simple, routine, repetitive tasks, as well as to understanding only simple instructions and communicating only simple information."); Diakogiannis v. Astrue , 975 F.Supp.2d 299, 315 (W.D.N.Y. 2013) (an RFC determination limiting a claimant to simple, routine, repetitive tasks was consistent with the ALJ's assessment that claimant had moderate difficulties with concentration, persistence and pace).
Plaintiff further contends that the VE stated that an employer would not tolerate more than ten to fifteen percent of time off task and, therefore, the ALJ was required to include a limitation for Plaintiff's ability to maintain attention and concentration, which Ms. Selden opined Plaintiff would not be able to do between ten to twenty-five percent of the time. (Dkt. 8-1 at 16). Despite Plaintiff's contention, Ms. Selden's opinion does not include a specific opinion relating to the amount of time Plaintiff would be "off task." Rather, Ms. Selden's opinion relating to Plaintiff's mental functioning, including Plaintiff's ability to maintain attention and concentration, is presented in a check-box form listing specific categories of mental functioning, a fact noted by the ALJ in the written determination. (See Dkt. 6 at 148).
An ALJ is not required to "explicitly... reconcile every conflicting shred of medical testimony," so long as the ALJ carefully considers all of the evidence in *339 reaching a determination. Miles v. Harris , 645 F.2d 122, 124 (2d Cir. 1981). Further, the ALJ's RFC need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). Rather, the ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Id. at 56. As noted above, Ms. Selden found that Plaintiff's limitations for most categories of mental functioning were normal. (See Dkt. 6 at 688). The ALJ specifically considered Ms. Selden's opinion that Plaintiff was moderately limited in maintaining attention and concentration (id. at 147), found that it was consistent with the similar limitations assessed by Ms. DiRoumo (who found that Plaintiff was "very limited" in her ability to maintain attention and concentration for rote tasks) and Dr. Shapiro (who found that Plaintiff had no sustained concentration or persistence limitations and no limitation in maintaining attention and concentration for extended periods) (id. at 147-48), and included a limitation for performing simple, routine, and repetitive tasks in the RFC (id. at 145). Accordingly, the Court is satisfied that the ALJ considered all of the evidence relating to Plaintiff's ability to maintain attention and concentration and assessed an RFC that is well-supported by the medical evidence in the record. Remand on this basis is not warranted.
C. Weighing of NP Cottrell's Opinion
Plaintiff's third and final argument is that the ALJ erred by rejecting NP Cottrell's opinion relating to Plaintiff's ability to work. (Dkt. 8-1 at 16). In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:
the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Pike v. Colvin , No. 14-CV-159-JTC, 2015 WL 1280484, at *5, 2015 U.S. Dist. LEXIS 35143, at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. Hall v. Colvin , 37 F.Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) ).
Under the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners are not considered "acceptable medical sources," and their opinions are therefore not "entitled to any particular weight[.]" Wider v. Colvin , 245 F.Supp.3d 381, 389 (E.D.N.Y. 2017) (quotations omitted). Nevertheless, an ALJ should consider evidence from "other sources," such as nurse practitioners, on important issues like the severity of an impairment and any related functional effects. See SSR 06-3p, 2006 SSR LEXIS 5, (S.S.A. 2006); Glena v. Colvin , No. 1:15-CV-00810(MAT), 2018 WL 739096, at *3, 2018 U.S. Dist. LEXIS 19833, at *8-9 (W.D.N.Y. Feb. 6, 2018) ("Nurse practitioners are defined as 'other sources' under the Regulations; they do not constitute *340 'acceptable medical sources' .... Nevertheless, SSR 06-3p recognizes that 'other source' opinions are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.") (internal quotation omitted). As the Court noted above, an ALJ may not disregard opinion evidence from a nurse practitioner or "other source" solely because it was not authored by an acceptable medical source. See Canales v. Comm'r of Soc. Sec. , 698 F.Supp.2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").
On April 11, 2016, NP Cottrell issued a physical assessment for determination of employability for the Monroe County Department of Human Services. (Dkt. 6 at 694). NP Cottrell had been treating Plaintiff since March 2016. (Id. ). NP Cottrell opined that Plaintiff could work up to twenty hours per week, with reasonable accommodations, and that the expected duration of this limitation was three months. (Id. at 695). NP Cottrell recommended that Plaintiff refrain from lifting, pushing, or pulling anything greater than fifteen pounds, and that Plaintiff should be able to change positions every two hours. (Id. ). A physical examination revealed normal general appearance, gait, and heel and toe walking. (Id. at 696). Plaintiff's systems were otherwise normal, except that she experienced pain to palpation of muscles in her thoracic and lumbar spine, with limited forward flexion of her back and limited ability to squat. (Id. at 679). NP Cottrell found that Plaintiff was moderately limited (two to four hours per day) in her ability to walk, stand, and sit, and very limited (one to two hours per day) in her ability to push, pull, bend, lift, and carry. (Id. ). Plaintiff had no limitations for her ability to see, hear, or speak. (Id. ).
At step two, the ALJ assessed Plaintiffs lower back pain (lumbago) as a severe impairment. (Id. at 142). However, he also found that many of Plaintiff's alleged physical impairments, including rule-out slight levoscoliosis of the thoracolumbar spine, shoulder pain, knee pain, ankle pain, hand, wrist, and finger pain - were non-severe, because there was not enough documentation in the record to show that these conditions rose to the level of a severe impairment. (Id. ). Plaintiff does not challenge this determination.
In assessing Plaintiff's RFC, the ALJ gave "very little weight" to NP Cottrell's April 2014 opinion regarding Plaintiffs limitations for lifting, carrying, pushing, pulling, bending, standing, walking, and sitting, as well as to her opinion that Plaintiff could work only twenty hours per week for at least three months, should refrain from pushing, pulling, and lifting more than fifteen pounds, and should change positions every two hours. (Id. at 148). The ALJ explained that he assigned "very little weight" to NP Cottrell's opinion because she was a non-acceptable medical source, provided no support, explanation, or medical basis for her opinions, and her opinions were inconsistent with the rest of the evidence in the record, including Plaintiff's conservative treatment[3] and activities of daily living. (Id. ).
*341 The Court has reviewed the record, as well as NP Cottrell's opinion, and finds that the ALJ properly afforded it very little weight. As noted above, NP Cottrell's opinion was not entitled to any special weight. Wider , 245 F.Supp.3d at 389. Further, NP Cottrell's opinion regarding Plaintiff's ability to work - which is significantly restrictive - is inconsistent with her own physical examination of Plaintiff, which was mostly normal, save for back pain and limited forward flexion and ability to squat. See Kelsey v. Comm'r of Soc. Sec. , 335 F.Supp.3d 437, 443 (W.D.N.Y. 2018) ("It is an appropriate exercise of discretion for an ALJ to afford little weight to a medical opinion that is internally inconsistent."). NP Cottrell's opinions regarding Plaintiff's functional limitations for walking, standing, sitting, pushing, pulling, bending, lifting, and carrying are not accompanied by any explanation as to how she arrived at these limitations despite Plaintiff's mostly normal physical examination; rather, they appear in a check-box form. See Torbicki v. Berryhill , No. 17-CV-386(MAT), 2018 WL 3751290, at *4, 2018 U.S. Dist. LEXIS 133834, at *10 (W.D.N.Y. Aug. 8, 2018) (ALJ properly afforded opinion of social worker "little weight" because she was not an acceptable medical source, she completed a check-box form in rendering her opinions, and her opinion conflicted with other medical evidence in the record). In other words, it was reasonable for the ALJ to find that NP Cottrell's opinions relating to Plaintiff's limitations and ability to work were not supported or explained.
Likewise, the ALJ's determination that NP Cottrell's assessment of Plaintiff's physical limitations is unsupported by the record as a whole was appropriate. Domm v. Colvin , 579 F. App'x 27, 28 (2d Cir. 2014) (ALJ may discount the opinion of a treating physician when the opinion is internally inconsistent with his own treatment notes, other medical evidence in the record, and the plaintiff's testimony); Micheli v. Astrue , 501 F. App'x 26, 28-29 (2d Cir. 2012) (ALJ did not err in declining to afford controlling weight to treating physician, where the opinion was internally inconsistent and inconsistent with other evidence in the record). As noted by the ALJ at step two of the disability analysis, a majority of Plaintiff's physical impairments were only briefly mentioned in the record, and the record lacked documentation showing that these physical impairments were severe and caused work-related functional limitations. (Dkt. 6 at 142). Plaintiff does not challenge this determination, nor does she point to any evidence in the record supporting NP Cottrell's assessment of Plaintiff's physical limitations. The Court has reviewed the medical record and agrees with the ALJ that NP Cottrell's opinion relating to Plaintiff's physical limitations is not supported by other medical evidence in the record, including relatively normal physical examinations. (See, e.g., id. at 568, 579, 589, 648, 696).
In the alternative, Plaintiff contends that, even if the ALJ properly *342 afforded very little weight to NP Cottrell's opinions, his doing so created an evidentiary gap in the record that the ALJ was obligated to fill by developing the record. (Dkt. 8-1 at 19-21). As an initial matter, the ALJ was not required to adopt NP Cottrell's opinion in its entirety, see Matta , 508 F. App'x at 56, and his decision not to do so does not automatically trigger his duty to develop the record. Rather, an ALJ has a duty to develop the record where there are "gaps in the record," or "when the record serves as an inadequate basis on which to render a decision." Grey v. Colvin , No. 14-CV-1275, 2015 U.S. Dist. LEXIS 42796, at *8 (W.D.N.Y. Mar 31, 2015). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Petrie v. Astrue , 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).
Here, the ALJ discussed at length the evidence relating to Plaintiff's physical limitations, including the opinion of NP Cottrell, objective medical evidence in the record relating to Plaintiff's physical limitations, and Plaintiff's own testimony as to her activities of daily living. (See Dkt. 6 at 145-46, 148). It was proper for the ALJ to assess Plaintiff's RFC without additional opinion evidence under these circumstances. See Reithel v. Comm'r of Soc. Sec. , 330 F.Supp.3d 904, 913 (W.D.N.Y. 2018) (where ALJ afforded only "some weight" and "limited weight" to opinion evidence, ALJ not required to further develop the record by ordering a new consultative examination); Dougherty-Note boom v. Berryhill , No. 17-CV-00243-HBS, 2018 WL 3866671, at *8, 2018 U.S. Dist. LEXIS 138097, at *25-30 (W.D.N.Y. Aug. 15, 2018) (ALJ did not create an evidentiary gap in the record by affording only "little overall weight" to the consultative examiner, who provided the only opinion evidence in the record relating to Plaintiff's physical impairments, where the ALJ weighed all of the evidence available).
The ALJ thoroughly discussed and considered NP Cottrell's opinions, and his reasons for affording them limited weight were proper and well-supported by the record. Under these circumstances, the Court finds no error in the ALJ's decision. See Saxon v. Astrue , 781 F.Supp.2d 92, 104 (N.D.N.Y. 2011) (noting that "the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources,' " as long as she "address[es] and discuss[es] the opinion").
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Plaintiff contends that the ALJ was required to re-contact Ms. Seldon to resolve the inconsistency between the medical source statement and county employability assessment. (Dkt. 8-1 at 15). In support of this contention, she cites to a case holding that if a physician's report appears inconsistent with her own records, the ALJ must seek clarification before rejecting the opinion. As an initial matter, Ms. Seldon is not a physician and, unlike a physician, her opinion is not entitled to any special deference. Further, "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician. Rather, because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent." Micheli v. Astrue , 501 F. App'x 26, 29-30 (2d Cir. 2012). Here, the record contains several opinions relating to Plaintiff's mental functional limitations which, as explained above, the ALJ weighed in assessing Plaintiff's functional capacity, including the opinions of Dr. Shapiro, Dr. Brownfeld, Ms. Seldon, and Ms. DiRoumo. Due to the already-comprehensive record before him, the ALJ was not required to re-contact Ms. Seldon. See id. at 30 ("the ALJ properly determined that he could render a decision based on the 500-page record already before him despite the discrepancies in Dr. Tracy's assessment.").

Plaintiff argues that her conservative treatment "is not substantial evidence for a lack of physical disability in the absence of opinions stating so." (Dkt. 8-1 at 18). However, the ALJ did not reject NP Cottrell's opinion on the sole basis that Plaintiff received conservative treatment. Rather, the ALJ rejected NP Cottrell's opinion on several bases, including that she was a non-acceptable medical source, she provided no support or explanation for her opinion, her opinion conflicted with other medical evidence in the record, and her opinion was inconsistent with Plaintiff's reported activities of daily living. (Dkt. 6 at 148). Accordingly, the ALJ's discussion of Plaintiff's treatment history was proper. See Smith v. Berryhill , No. 17-CV-6465L, 2018 WL 5266794, at *2, 2018 U.S. Dist. LEXIS 181798, at *6 (W.D.N.Y. Oct. 23, 2018) (remand not required where "the ALJ did not rel[y] heavily on the inconsistent nature of plaintiff's treatment history to support his findings: the ALJ's conclusions instead rested primarily upon the moderate examination findings and conservative treatment rendered on those occasions when plaintiff did receive treatment") (internal quotations and citation omitted).